[*General Term, January* 1873.]

JOHN J. HOOKER, ADMINISTRATOR OF SAMUEL STARTZMAN, DECEASED, *v.* THE BOARD OF DIRECTORS OF WITTENBERG COLLEGE.

If a bill of exceptions does not profess to set out the evidence, but merely states that there was evidence before the jury "tending to show" that the obligor of a bond, "at and about the time" he is alleged to have executed it, "was of diseased and unsound mind," yet fails to state that the evidence tended to prove that he was *incompe-*

*tent* to execute such bond by reason of such diseased and unsound mind, the court, upon error, can not *infer* that the evidence went to the extent of tending to prove mental incapacity; and especially is this so if no such defense is set up in the pleadings, and a charge of the court in such case upon what insanity is, and what will or will not constitute a defense on that ground, is wholly immaterial.

In a statute incorporating a college for the promotion of scientific and theological knowledge, such corporation was authorized to receive "*donations*," but the act was silent as to *subscriptions.*

*Held*, that where a party executed a bond, reciting that the same was in fulfillment of an undertaking, agreement, and subscription between the obligor and other persons and the college, to create for it an endowment fund, such bond is a "donation" within the meaning of the statute, and is enforcible in law against the obligor.

*A. Taft & Sons* and *I. J. Allen*, for plaintiffs.

*Huston & Shunk*, for defenaant.

YAPLE, J. This is a proceeding upon petition in error, asking to reverse a judgment rendered by this court, at Special Term, in favor of the board of directors of Wittenberg College, against Hooker, as administrator of Samuel Startzman, deceased, for $2,931 and costs.

The cause was tried to a jury, which rendered a verdict against the administrator for the above sum; a motion for new trial was made and overruled; a bill of exceptions taken, which does not set out the evidence; judgment rendered upon the verdict, and a petition in error filed here.

The action was brought upon a *sealed* instrument (a bond), dated September 1, 1864, made by Startzman to the above-named board of directors, in the sum of $2,000, conditioned, "that, whereas, the said Samuel Startzman *and sundry other persons*, having undertaken and agreed *to and with the said board of directors* to endow Wittenberg College, and the said Samuel Startzman having subscribed for that purpose the sum of two thousand dollars, payable to said board of directors, or to its assigns, within one year after his decease, with interest from the date hereof, payable annually during the natural life of said Samuel Startzman.

Now, if the said Samuel Startzman shall, during the term of his natural life, well and truly pay the said interest annually, and if the personal representatives of said Samuel Startzman shall also, within one year after his decease, pay to said board of directors, or its assigns, the said sum of two thousand dollars, then this obligation to be void. Provided always, that the said Samuel Startzman, his heirs, executors, and administrators, shall have the right, at any time before the said principal sum falls due, to be released and discharged from the obligations of this instrument, by paying to said board of directors, or its assigns, the said principal and all interest that shall have accrued thereon up to the time of such payment."

The amended petition states the facts and circumstances under which said bond was executed and which were well known to the parties. It avers that Wittenberg College was incorporated by the legislature of this state, by special act, passed March 11, 1845 (43 Ohio L. L. 375), for the promotion of scientific and theological knowledge, with express power to hold property acquired " by purchase or *donation ;*" that, to accomplish its purposes the college was dependent wholly upon voluntary "*subscriptions*" and donations ; that the college was located in Clark county, Ohio ; that Startzman's and other similar bonds were executed to the college directors, to carry out the objects of the charter ; that, relying upon the payment of such obligations, the plaintiff was induced to and did accept said trust, and undertook to execute the same, which it continues to do, by the employment of officers and teachers for the college ; and that, in the execution of such trust, the plaintiff has incurred, and is now incurring liabilities, for the payment of which this and similar bonds are relied upon by it.

Except the charter, etc., the defendant, by answer, denied these facts, and we do not know whether they were proved or not.

The bill of exceptions merely states that there was

evidence given at the trial *tending* to "*show* that the defendant's intestate, at and about the time of making the instrument in writing, upon which the plaintiffs' action is founded (a copy of which is hereto attached and made part hereof, marked "A."), was of *diseased and unsound mind*," and that such bond was put in evidence.

·The *charges* given and refused in relation to the evidence tending to " *show* " that Startzman, at and about the time he executed the bond, was of "*diseased and unsound mind*," and in relation to the validity of the bond as a debt against his estate, are all that the plaintiff in error complains of.

As to the first, the court charged the jury :

" That the law presumes mental capacity to contract, and it would devolve on the defendant to rebut that presumption by satisfactory proof of insanity ; and that, in regard to insanity, when there is no frenzy or raving madness, the legal and true character of the disease is *delusion*, or, as the physicians express it, *illusion* or *hallucination.*"

To this, the defendant below excepted.

And the defendant below asked the court to instruct the jury :

"*First.* That the bond sued upon may be void of itself for want of consideration ; and if void, an action can not be maintained thereon, unless the same be rendered valid by virtue of statutory provision."

This charge the court gave as requested.

"*Second.* That the charter of Wittenberg College authorizes it to acquire property for its purposes, either by ' purchase or donation,' and not otherwise ; and that a donation or gift is not valid without delivery of the thing donated or given, and that ' *donation* ' and ' *subscription* ' are not words of the same import.

" *Third.* And that there being here no delivery, but merely *a promise* to give a donation in the future, such promise is not binding for want of consideration and for want of statutory provision making such promises binding · under the charter to the present plaintiff."

The last two instructions asked, the court refused; and the plaintiff excepted.

The court then charged the jury:

"That the delivery of the instrument sued upon was, of itself, a *donation*, and, under the plaintiffs' charter, would sustain the plaintiffs' present action."

When a case comes before a court upon error based upon a bill of exceptions, like the one in this case, viz., that there was evidence merely "*tending* to prove," etc., it must expressly state *all* that the evidence tended to prove—nothing can be inferred. "We can, in such cases, *infer* nothing beyond what the bill of exceptions expressly states the evidence tended to prove." *U. S. Express Co.* v. *Bachman*, 2 Superior Court Rep. 256 ; *Leach* v. *Church*, 10 Ohio St. 148.

This bill of exceptions does not state that Startzman was *incompetent to contract* by reason of a diseased and unsound mind. It simply states that at and about that time the evidence tended to "show" that his mind was diseased and unsound, leaving it to mere inference that he was not, for that reason, competent to make a valid contract, which does not necessarily follow in *all* cases of diseased or unsound mind. Cases have been known where persons whose minds were, beyond question, diseased and unsound— who were in a lunatic asylum, under treatment therefor— have yet been perfectly rational upon their business affairs, and competent to manage them, and who have, while so confined, directed their management by letter. Of course, if incompetency to contract for such cause be claimed, such diseased and unsound condition of the mind must be carefully considered. Startzman may have had a diseased brain, causing, by lesion, partial paralysis of the body, and yet he may have been shown, by evidence given to the jury, to have been competent to conduct business, both public and private, in a most rational and efficient manner.

No defense of insanity, or incapacity to make the bond in suit, by reason of diseased or unsound mind, was set up

in the answer, as the code requires, that being new matter constituting a defense; but the question seems to have been suggested during the trial—If an answer had been filed stating only that Startzman, at the time he executed the bond, was possessed of a diseased and unsound mind, without averring that he was thereby rendered incompetent to contract, it would not have stated facts sufficient to constitute a defense. We are, then, to conclude that there was not evidence given tending to prove all the facts necessary to constitute a defense. If there was not, the charge of the court upon insanity was merely an *abstract* charge, outside of the evidence in the case; and, whether correct or not, furnishes no ground of error.

This is too well settled in Ohio to need the citation of a single authority. Such charges can not *mislead* the jury, for there is nothing to which they can apply. We need not, therefore, consider whether the charge, if the evidence had required it, was erroneous or not. It may have been too narrow, though founded upon the very text of Redfield's Greenl. Ev., vol. 2, sec. 371, *a*.

There may, perhaps, be chronic insanity where there is no delusion, illusion, or hallucination, and no raving madness. Perhaps the best practical test of insanity is to compare the person with his former self, while undoubtedly sane, making the proper allowance for differences of bodily health and strength. If all the faculties brought into exercise are similar in kind and character to what they have ever been observed to be, though not so strong in degree, the person is sane, even if his ailment result from a diseased brain. Abnormal mental manifestations of any kind, producing any marked line of unnatural conduct on the part of the individual, are all evidences of insanity.

But this subject we are to dismiss in the consideration of this case, for the reason that the evidence given at the trial did not tend to "show" or prove that Startzman, from a diseased and unsound condition of mind, was not competent to execute this bond.

This brings us to the consideration of the main question in the case, as want or failure of consideration may be set up as a defense to an action upon a deed or other sealed instrument in Ohio. The bond sued upon in this case purports to have been made in execution and performance of an undertaking, agreement, and subscription, made by Startzman with the plaintiff and other subscribers, to endow this college, which was made either before or at the time of executing the bond, but *independently* of it.

This the plaintiff maintains made the bond a present debt, not a mere executory promise, but an executed act, under seal. Where a transaction is unauthorized by law, or is contrary to law or public policy, and a party has executed it, he will be bound by such execution.

The case of *Roll* v. *Raguet*, 4 Ohio, 400 ; 7 Ib. 76, pt. 1 ; Ib. 70, pt. 2, fully illustrates the principle and the distinction between things executed and executory. To suppress a criminal prosecution, a note was given by one party to the other, secured by mortgage on real estate. In an action upon the note no recovery was permitted, because the promise was executory. No foreclosure of the mortgage was permissible, for the same reason—it being a mere security for the debt; but a recovery in ejectment upon the mortgage deed was finally had, because the contract in that view was fully executed. See also *Goudy's Adm'r* v. *Gebhart*, 1 Ohio St. 262.

The plaintiff also claims that this college was expressly authorized by its charter to receive " *donations ;* " and as the act does not distinguish between a donation and a subscription, even the latter, if merely executory, is a donation within its meaning. The defense contends that this entire transaction is executory, and that a donation means a gift executed.

If this be the correct construction of this statute, then its provisions are strangely defective, and inadequate to secure the objects of such a college.

As one of the best supports such an institution can have

is an endowment fund upon which it can rely and base its undertakings, and as but little could be expected to be given in money or property in hand, such recourse would be virtually denied it, if defendant's view of this statute be the correct one.    The policy of our state has ever been to encourage institutions of this kind, and all statutory enactments in their behalf are to be liberally construed.    We think that the principles settled in the *Commissioners, etc.* v. *Perry*, 5 Ohio, 57, and in *O. W. F. College* v. *Love*, 16 Ohio St. 20, settle both propositions of law as claimed by the plaintiff in its favor.    Love's subscription in the last case was merely executory; but the statute expressly authorized the college to receive *subscriptions* as well as " donations," thus distinguishing between them in that act. In these two cases, all the authorities relied on by both parties are cited by counsel or court.    The tendency for years has been to extend further and further liability upon subscriptions of this kind, though merely charitable, and intended in no way to benefit pecuniarily the subscribers.

Most, if not all the cases, however, speak as if the actual undertaking and carrying out of the object by the beneficiary is essential.    We concede that, if the object be abandoned without any obligations having been incurred, no recovery can be had in such cases; but the collection of such funds may often be necessary to commence, carry on, and complete the undertaking, and in such cases it is difficult to perceive why such claims are not, from the time they are incurred, enforcible according to their terms.

The judgment will be affirmed, without penalty.